Good morning, Your Honors, and may it please the Court, Arturo Aranda brings to this Court two clear instances of constitutional violations. First under Miranda v. Arizona because the trial court unconstitutionally admitted an uncounseled confession and second under Wiggins v. Smith where a deficient sentencing phase investigation by Aranda counsel left undiscovered and unused clear evidence of mitigation that could have bore on the determination in the sentencing phase that Mr. Aranda merited the death sentence. On the Miranda claim that his post-warning statement in a custodial setting violated his constitutional rights, the Supreme Court has been clear that a confession given in a custodial setting is a constitutional violation unless the defendant voluntarily, knowingly, waives his rights. In this instance, the state trial court at trial addressed the voluntariness of the waiver and made findings concerning the voluntariness of the waiver based on the evidence then adduced and throughout the rest of the state court proceedings, the determination of the trial court that started the trial and reconvened the hearing, the suppression hearing on the viability of Mr. Aranda's statement, addressed only the voluntariness of that confession. At no time were findings made through the trial court determination and on review to the appellate court of the separate but equally important requirement that a confession be shown to be knowingly and intelligently waived. Let me ask you this, even if we assumed arguendo that you're correct on that part of the Miranda issue, what about the harmless error point? There was a lot of evidence against your client, so why would it not be harmless error if in fact we found it was error? Well, I think primarily the central issue with respect to the harmlessness issue is just the absolute importance of a confession with respect to the state and its case and particularly in this case where the state had to prove that Arturo Aranda knowing intentionally shot and killed the officer at the scene of that incident. That was the charge to jury and the jury had to weigh the evidence that the state brought to the hearing, to the trial regarding that issue. It was not conclusive. Setting aside the confession for a minute, there was no direct eyewitness of the shooting other than the observations of one police officer who saw a shot coming from one side of the car. But that was the side that your client was in, right? And then they also found the gun on him at the hospital. Which is another interesting point, your honor. You're absolutely correct. They found the gun at the hospital and how it was that they took him and he was shot at the scene, so he was being carried toward the scene, taken to the hospital from that scene and how it was that the officers there never found a gun on him when he was pretty immobile and clearly could have been frisked or whatever at the scene and then suddenly it appears at the hospital. And the nurse's that she saw at the hospital was not the gun that the state was presenting in evidence at the trial. So there is dispute about whether or not Mr. Aranda was in fact the shooter. And I would also point out that although he and his brother were excuse me, were first together tried, that they were separated at a certain point in time and each went to separate trials at which they were tried for the intentional shooting of this police officer. Juan Aranda, his brother, first went to trial and was found guilty of intentionally shooting the police officer, went to sentencing phase and was found to be earning a life sentence. Counselor, can I get back to the, I realize you're given an answer about harmless error and I appreciate that, but let me get back to the hearing on Aranda's claim. You don't argue, as I understand it, you're not arguing that there was anything deficient about the evidence that was offered. There was testimony and you don't argue anything about the hearing itself. What you're arguing about is that the judge never made an explicit finding about a knowing and intelligent waiver. Isn't that correct? That's correct. Let me finish my question. With regard to the hearing itself, can we not, since the motion was denied, the motion to exclude the confession was denied, can we not imply that the judge found that there was a knowing and intelligent waiver from the record as long as the record supports the denial of the motion? I would respectfully disagree because each of those requirements are adjudicated in a very different context. The voluntariness of the action in taking pen to paper is one element. Was he forced to do it? Was his hand held, etc.? But the knowing and intelligent requirement goes to a very different set of circumstances. It goes to whether there was an appreciation of the consequences of giving that waiver. And so adjudicating the evidence that was before the judge concerning Aranda's limited education, concerning his limited ability to speak and understand English may have not been properly adjudicated in the context of knowing and intelligent. You agree with me that the evidence was offered regarding his medical condition as well as any limitations he might have. There was evidence offered on both of those points though, correct? And that there was no deficiency. The evidence regarding each of those elements that I was talking about, the medication, the education, the limited language ability, there was evidence in the record that the judge could have addressed, looked at, and attempted to understand in the context, not whether he was forced to put the pen to paper, but whether he understood that he was going to give up his right to not testify against himself. Did he understand that anything that he said in that statement could be used against him at trial? Did he understand fully that it was a capital case and that that meant a great likelihood that he was going to be subjected to an execution sentence? Yeah, I want to ask about that. I mean, I understand that he may not have realized all of what the future would hold. That's probably true of everybody who confesses, and I don't know that that's the standard. And while it is not the standard, my question is, wasn't he aware that he would be charged with murder? So even if he didn't understand that he might ultimately be executed, he would understand that that was pretty serious to be charged with killing a police officer isn't going to be something that you just get a $500 fine for. I think wouldn't anybody really know that pretty much? I think you're absolutely right, your honors. There would be that concern and fear that this is a bad situation that I'm in. But there's testimony in the record as well, that the DA, before the statement was given, talked to one of the officers who was then sent to Aranda. And the officer was instructed by the DA to tell Aranda that, you know, he'd be better off if he gave this statement. That, you know, so there you've got somebody who's got an eighth grade education, who's in fear of consequences, who has found out that the officer at the scene was killed, knowing that they're facing consequences and being told that you'll be better off if you give the confession. So he was given an option to plead guilty, that would have been better off than what he ended up with. So that I think is what they are referencing is that moving down that, it doesn't always work out perfectly, but moving down that road allows you in a place that maybe gives you a lesser sentence. And so that is something they say a lot, go ahead and tell me where you're at, because that can put you down that road. Now, I understand you're entitled to a jury trial, you're entitled to plead not guilty and all of that. I'm just asking, you know, is that necessarily anything different than is usually done in these situations? Well, I think, Your Honor, respectfully, if it were a college educated person, for example, in there, the circumstances would be weighed in a much more sophisticated way. And I understand that this is, you know, a situation that relies on a whole constellation of circumstances and facts. And the record, I think, establishes pretty clearly that he was directly off a shootout situation that they were not necessarily the ones that initiated the first shot, that's still in and discharged from the hospital and put under the care of the prison, you know, hospital situation. And being told that, yeah, that you are charged with murder, or could be charged with murder, some kind of murder. We don't know, and he didn't know, and he didn't have counsel at the time to tell him, okay, these are the possibilities that you're facing here. So he's left with a limited understanding. There's disputed record evidence, it seems to me, as to the extent to which the confession, the waiver language and the confession language were discussed with him in Spanish. Can you tell me what's your best case for the proposition that you have to understand all that you could be charged with all the sentences you could get in all of that when you are given a Miranda warning and you confess? Can you tell me your best case on that proposition? The best case in terms of what would be the ideal circumstances? No, what's required? I mean, you are holding a very high standard for what's allowed in confessions, and I don't think that is the law, but I'm so I'm asking you, what case are you relying on for these arguments? Well, Your Honor, I think, you know, Miranda is the law, and Miranda said that confessions are such a dramatic and critical element of the case that a state would put on against a defendant that it merits special attention and special monitoring to make certain that the person who's giving the confession is not only voluntarily giving it, but understands what the consequences are. And here, the full consequences in a capital case, which is, again, another special situation where he can be executed for what he's done or what he says he's done. It just merits a higher level of scrutiny by the trial court with respect to the admissibility of the confession than was accorded, Mr. Aran here. Okay, let me turn to another question, which is you have said, you know, if you don't agree with me on this, at least on both claims, at least send it back for an evidentiary hearing. Can you tell me if we sent either argument, the Miranda or the Strickland slash Wiggins case back, what exactly would this hearing be? What are disputed facts that would need to be decided? And what evidence would be what would this hearing look like? Well, with respect to the confession, the extent to which Mr. Aranda was physically harmed before the confession, beaten by the police, that was an issue that was raised. That's in dispute. Whether he not he was requested counsel, he says he testifies that it was four times the state says, based on the officer's testimony that it was zero times the extent to which the state court determined that the state court made a credibility finding that it believed the officers and not there's nothing I'm asking what would be new? What would be things that were not presented? Because this is a pre case. So what would be new? What was not presented? Because if the state courts already ruled on the um, these kinds of things, and found they believe the officers over your client, we're done. So what is it that is new, that would be presented that was not already determined? That's what I'm sorry, that's what I'm asking. The fair variety of things. Number one, the, the whole issue of his background, which may sound like it has, you know, relevance only to the mitigation issue for sentencing. But the fact is that there is clear evidence that was not before the trial court, that he was subject to a police beating when he was a youth. The, there is no real evidence that of the type of, we know the type of medication given to him, but evidence of what that does to somebody in terms of mental processing, etc, if you're being demoral, given demoral on top of painkiller. So we don't have that type of evidence concerning the, the effect of that on Mr. Aranda's ability to comprehend and reason, etc, at that time. So, and there are affidavits that we've offered in support of the habeas petition regarding significant background information that discloses the rather troubled childhood that he had, that may have impacted him in a way that affected his ability to reason and understand. I mean, none of that was really gotten into in the trial. So I do. And I appreciate that. So I, I have, you're running out of time, you know, you're getting low on time. So I do want to ask something that relates to the mitigation issue. And that is in looking at the materials in the state court, there were a lot of arguments about the inability to provide mitigation because of Texas law at that time. We were talking about Texas law, something like 45 years ago, I mean, a long time ago. And, and there were so many claims about I couldn't do this. I couldn't do that. I couldn't do this. I couldn't do that. How do you square that with the argument that the, the trial judge lawyer, the trial lawyer didn't do enough mitigation when their argument is we couldn't do mitigation? How do you square those two? Well, I would disagree that, that he was limited in what he could do to produce some evidence of mitigation that would have borne on both the deliberateness fact question that had to be answered and the, the future dangerousness. And his family members were available to the, to counsel to be, you know, interviewed to get affidavits, to get testimony regarding what his upbringing was like and how that might have affected him or that the, you know, in, in contrast to the, the rote litany of the officers who came in during the penalty phase on behalf of the state and said, well, he has a reputation for being a bad person. But counsel, with regard to mitigation, you agree that we have to hold the lawyer to the time in terms of what's admissible, what's the customary practice, all of the options or lack of options available to the attorney at the time of the sentencing. Isn't that correct? That's correct, your honor. And I think in briefing, we have, we set forth a number of sources that existed at the time that emphasized as a best practice in the profession that you do investigate and you bring when possible evidence of mitigation into a penalty phase, even though we have a different structure now that, that addresses mitigation itself. Nonetheless, a lot of that evidence, call it what you want, background evidence or whatever, whether did bear on the issues that the jury had to wrestle with in the penalty phase in terms of how likely it was that this was going to repeat itself. How deliberate was he in the context of that shootout when he had police shooting at him and he had a background of police brutality that he suffered through, how likely was it that it was spontaneous, not deliberate? So I think the fact that there was recognition at the time in the profession that you needed to do something at the sentencing phase in order to best represent your client. Okay, but I'm still having trouble with how you square that with all of the many, there were so many arguments made about inability to mitigate. How can you square those arguments with the one you just made? That's what I'm trying to understand. Well, I mean, there may have been many barriers to doing exactly what you're saying, your honor, but it may take only one additional bucket of information of evidence put before a jury that has to reach a unanimous decision to affect it. And it could have affected it at the guilt phase as well. It may not be just restricted to a penalty phase issue. I mean, the whole notion of his background, if properly evidenced at trial, could have influenced a juror, one juror, with regard to guilt. Well, that's not before us because there's a COA on only two points. And this is just on the mitigation and sentencing point. So we can only consider, we only have jurisdiction over what the COA was granted on. Right. I understand your honor. And even limited to the could have turned the attitude of one of those jurors. And in a capital case, it seems to me that there is a higher standard to worry about with respect to the effectiveness of trial counsel. So I'm happy to answer more questions now. But if the court agrees, I reserve my two minutes and counting down for rebuttal. Okay, colleagues, any more questions for Mr. Kearney? Okay, you can mute yourself for now. And we'll hear from Ms. Thompson on behalf of the state and you can unmute yourself. Thank you, Judge Haynes. May it please the court. The petitioner is not entitled to federal habeas relief from his state judgment conviction for Laredo police officer on either of his two claims. First, the Miranda claim. To be clear, as Judge Englehart pointed out, and as part of one of his questions, the state trial court did have this evidence in front of it. And it did make an ROA 4443, a number of explicit factual findings that bear on the questions that issue here, both as to voluntariness and to the knowing and intelligent claim that this before this court today. And even if there were error in the admission of the statement, the petitioner would have to satisfy Brecht v. Abramson and show actual prejudice, and he cannot carry that burden on this record. Second, the Wiggins claim under Strickland. Even under de novo review, the petitioner cannot show that counsel was ineffective at the mitigation stage. Counsel's performance was reasonable in light of 1979 professional norms, and the petitioner cannot show Strickland prejudice, which is also required. We'd suggest to your honors that the simplest resolution of this case is to hold that there is no prejudice under Brecht, and therefore affirm the denial of relief on the Miranda claim. And as to the Strickland and Wiggins claim, to hold that there was no ineffective assist, or that there was no deficient performance under the first round of Strickland. The petitioner can't satisfy any of the other requirements either. Okay, but then how do you on the Strickland, how do you deal with the fact that, you know, the claim was, well, I thought that it would be double-edged and la la la, so I didn't investigate. But the problem is, if you don't investigate, how can you analyze what it would have been? Your honor, even today, the petitioner hasn't identified any additional evidence that counsel could have and should have discovered. When these Wiggins claims come before courts, and when professional norms of more extensive mitigation evidence have developed in more recent years, what we see in federal habeas is actual evidence of perhaps a mental illness, brain injury, some really egregious tragic circumstance that the defendant experienced as a child. We don't have any of that here. There's no, the counsel was aware that the defendant came from a poor family in San Antonio, had many brothers and sisters, so that's not part of the Wiggins claim. The counsel obviously did do some background investigation and was aware of the defendant's general upbringing and background. So the Wiggins claim here relies on information that counsel did not know of and should have discovered in mitigation. But even today, 40 years later, there's no indication that there's something that counsel should have put before the jury. Not only that he should have put before it at all, but especially that would have made a difference in light of- So the defendant has been this brain injury when he was younger and attacked and got a brain injury, and what about that? That's the suggestion in briefing, your honor, but there's no evidence to support that. Family members testified that this event occurred, and assuming that's true, putting that before the jury would have been double-edged. Counsel recognized that the defense risked bringing out a much worse, a much more extensive prosecution case for future dangerousness and deliberateness if the defense put on additional evidence at the sentencing phase and made a reasonable choice not to do so. So evidence that the defendant had been injured in a mistaken arrest by a police officer when he was 16, perhaps that would weigh in the way that habeas counsel now says, but it also could have weighed against him before the jury. The jury would have looked at that and inferred that he did act deliberately, that he hated police officers, and that when he saw one approaching him to arrest him, he reacted with the gun in his hand. So even if that incident, which is really the only new thing that I can find in counsel's briefing or the habeas petition that was not within defense counsel's knowledge, that evidence fails because under the Strickland prejudice prong, you've got to show that there was some substantial likelihood that the result would have been different, and that evidence was double-edged. And again, Your Honor. What about alcohol and substance abuse? How would that play out? In the same way, Your Honor, defense counsel recognized that aberrational background in its defendant was going to be used by the prosecution to show future dangerousness, and he made a reasonable decision not to open his client up to medical experts' expert testimony talking about how a defendant who abuses alcohol and drugs, to the extent that's in the record, is, for that reason, more likely to be dangerous in the future. Now, I don't recall an alcohol and substance abuse showing on this record. My recollection is that counsel contended at trial that the defendant had been drinking on the night of the crime, but that evidence was put before the jury, and the jury gave it the weight it was due. Again, Your Honor, on the Strickland claim, there's no evidence that he suffers from any mental illness, that he suffers some horrendous childhood abuse, like you see in the Williams or the Wiggins cases that were decided in the early 2000s. There's nothing like that here, and there's certainly nothing... What about his claim that he'd like to put on some evidence that that's part of the problem, and he wants us to send it back to the district court for that? Your Honor, the time to do that was in his habeas petition. He filed a federal habeas petition. Before that, he filed a state habeas petition. He could have submitted evidence showing some sort of brain injury or mental defect, and even 40 years later, he still hasn't done that. An evidentiary hearing might be material if there were an issue of credibility on the evidence put before us, but there's not. The district court determined that no... The federal district court, to be clear, determined that no evidentiary hearing was necessary here. Even considering counsel's affidavit about his the petitioner's family members. Given that decision, the district court presumed the truth of all of those declarations and nevertheless concluded it was immaterial. Now, that was not an abuse of discretion. In the same way, the state courts concluded that the evidence submitted was not sufficient to raise a material dispute or fact, and that was reasonable. That makes sense on the record that was presented in the state habeas petition. Is it your position that if we sent this back for an evidentiary hearing, you would have objections based on the failure to have provided this previously? Yes, Your Honor. Okay. Yes, Your Honor. Can you address the issue that I raised with Mr. Kearney about how do you square the arguments about inability to put on mitigation with you should have put on more mitigation or some mitigation? Certainly, Your Honor. So, recall this trial occurred in 1979. That's just a few years after the Supreme Court once again allowed states to impose the death penalty. So, professional norms in capital litigation in Texas were in their very early stages. At that time, the three special sentencing issues didn't include a specific general mitigation instruction. And many decades later, the Supreme Court would hold that in But counsel at the time would have had to make a decision. Should I roll the dice on some time later, the federal courts deciding that additional instructions are necessary, or while at the same time taking a risk that the jury will consider this evidence against my client, particularly given that the prosecution will bring in experts to show that it actually increases his likelihood of future dangerousness? Or do I keep it out? If I don't put it in, then we don't open ourselves up to that prosecution testimony. We don't offer it up to experts talking about the propensity for future violence that arises from whatever that mitigation evidence might be. Counsel made a reasonable choice here. Again, it's 1979. None of these is about mitigation. And indeed, the cases about modifying Texas's special issues were many, many decades in the future at that time. Well, was it even a good lawyer view to say in his mind? Well, instead of putting on the mitigation now, I'll see if my procedure works, and he doesn't get the death penalty. But if he does get it, then I'll argue all this, I wasn't allowed to put on mitigation and mitigation needs to be allowed more. So you kind of have it both ways, is that? And your honor, in a sense, that is what happened. The council decided not to put on this background information about which he was aware, because he believed it would be not useful. And then in state habeas and in federal habeas, the petitioner pursued claims that the statute was unconstitutional, and all of those things. Now there's no COA on those questions, and the state court rejected many of them. But yeah, I realize that. But I guess I'm saying that as a lawyer, you know, making that determination can make some sense. Absolutely, your honor. Because if your client has a death penalty sentence, you want to keep things going as long as you can. And actually, the lawyers in this case, somehow managed to do that, because then although there's a death penalty, that your client is still alive. Absolutely, your honor. I'm not meaning to laugh about that, that it's not funny. But it's interesting, because here, it's been 46 years since the crime and something like 43 years since the sentence, and he is still alive. So some of what the lawyer did worked in that direction. And again, I'm not criticizing or complimenting anybody, I'm simply observing. Indeed, your honor, I would agree. That's a strategic call that counsel seems to have made, and it seems to have paid off, at least in some sense. If there are no further questions on the Strickland claim, your honors, I'll turn to the Miranda claim with my remaining time. So the Miranda claim relies, of course, the petitioner has to make two showings. First, that there was a violation of Miranda, that the statement was not made knowingly and intelligently. And second, he has to show actual prejudice underbred. Now, we submit that the petitioner cannot satisfy either. On the first point as to knowing an intelligent waiver, the state court absolutely held multiple evidentiary hearings, multiple instances of testimony were given on the motion to suppress. And the state court explicitly found that the petitioner was given the necessary warnings. That's at ROA 4443. And that explicit factual finding implies additional factual findings that foreclose the petitioner's claim here. For instance, the petitioner had testified that he was never read his rights, never given the warnings. The state court's factual finding rejects that. So in addition to its general rejection of his credibility, the state court's findings are inconsistent with the theories that the petitioner posits now and with the testimony he gave at the time of trial. The state court's factual findings at ROA 4043, there are two on which I'd like to focus. One is that he was given the necessary warnings, I would have noted. And the second is that he gave a statement in his own handwriting. Now, that's an implicit rejection of the petitioner's claim today that he couldn't read and write English. And he testified to that to the state court. So the state court rejected that. And that foreclosed, that state court fact finding is presumed correct. So it forecloses the argument here that a language barrier prevented him from understanding the warnings in the waiver. Now, that factual finding about that he gave the statement in his own handwriting is also an implicit rejection of the petitioner's testimony that he was basically unconscious, he had no idea what he was signing, that he was in such a condition due to pain or medication or some combination of the two, that he had no idea what was going on. The fair import of the district court's fact finding that he gave a statement in his own handwriting is that he was acting of his own will, he was cognizant of what was going on. And it's also an implicit rejection of testimony that the officers were just telling him what to write. So the state court's finding that he was given the warnings and the findings that he gave a statement in his own handwriting, regardless of the argument here of as to whether or not the state court actually decided knowing an intelligent waiver, those factual findings are presumed correct. And that's required by pre-edit 2254 D. Can you elaborate on that? Because to be honest, I don't get a lot of pre-EDPA state court cases on death penalty. So I'm just kind of wondering, like, how does that influence this? Because obviously high EDPA deference and so forth is a bucket that helps the state. But what about the 2254 D provided that state court fact findings are presumed correct unless the petitioner can make one of various showings, including that the state court procedures didn't give him a fair and full hearing, that there was some violation of his due process rights, that the state court didn't hold a hearing at all, and the like. As the petitioner has recognized in this court, there was a hearing held, he has no objection to the procedures. So none of those circumstances apply. And that means under the relevant version of 2254 D, the state court's factual findings are presumed correct. Now EDPA also added deference to the state court's legal determinations. So as we see it in normal cases today, 2254 D is now about deference to the state court's determination of any claim adjudicated on the merits. In a case brought today under EDPA, the dispute here would be, did the district court decide the knowing an intelligent waiver question or not? Now that's not really material in a pre EDPA case because there's no EDPA deference to the state court's legal determination. So that's why I'm happy to assume arguendo that the district court didn't actually decide the knowing an intelligent waiver point. Now, if we had to argue about it, I would certainly disagree with the petitioner, but the district court, it's clear from ROA 5395 that the district court was aware that admissibility inquiry. So you don't think it was an implicit finding as Judge Englehart asked about? Well, your honor, I will agree that the fact findings at ROA 4442 and 4444 do not expressly write out, I find that the waiver was knowing and intelligent. It is a more, the legal conclusions in those findings more generally go to saying that it was voluntary and that it was not coerced and that it is admissible. So we would probably in an EDPA case be arguing about an implicit adjudication as opposed to an explicit one on the merits. But again, that doesn't matter in a pre EDPA case because we agree the only thing that matters is the factual findings that the district court made. Even if the district court didn't decide the question, we'd be doing the same thing anyway prior to EDPA. The petitioner doesn't argue that the state court's fact findings aren't supported by the record and there's really no way to do that. You're saying the fact finding that he wrote out the confession and so forth is what supports the knowing? Yes, the explicit fact finding. What about this notion that he had no idea that he was walking down a road that would take him to death by doing this? How do you respond to that argument? Your Honor, the petitioner concedes that the exact nature of the charge is not required by Miranda and it's not required by the Sixth Amendment. So for that to do any work, you would have to already have disregarded the petitioner's theories as the state court did because if he didn't understand what was being said to him and if he was unconscious or on so much pain medication that he couldn't think straight, it wouldn't have made a difference whether or not they specified capital murder as opposed to murder more generally. In a sense, that argument is completely inconsistent with his other theories for why Waver was not knowing and intelligent. And in any event, it's not the law that the exact charge is or all of the potential. That's why I asked what case was the best case he had and he just said Miranda. So I mean, it is clear that you don't just have to think you're at a bar telling a joke when you make a fake confession or something. You do have to understand that you are confessing to something that could be a crime, etc. But I do think there's no dispute that that that's entirely consistent with the state's position. Absolutely. False confessions, though that has occurred. I do that. Certainly it has occurred in history that people have made false confessions. I'm happy to concede that your honor here. This is not a case that rested on the confession. There was voluminous physical evidence testimony from Officer Vieira who witnessed the shooting and from other officers who arrived at the scene shortly thereafter. This goes to the prejudice point, your honor, which I'll just turn to now. Brecht v. Abrahamson puts the burden on the petitioner to show that there was a substantial and injurious effect or influence on the jury's verdict. So even if this confession had been admitted in error, he cannot satisfy Brecht v. Abrahamson because this is not one of those cases where the linchpin of the state's case was a confession by the defendant. Indeed, the state's opening statement to the jury did not so much as mention the possibility that it would see a confession during this trial. And the state was content to close its case without it. Its entire case in chief dealt with other evidence. And that included ballistics evidence that tied the bullet that killed Officer Alvarez to the gun that the defendant was carrying. His brother, Juan, agreed that his brother had been carrying a pistol and used the pistol in the shootout. And importantly, no one argued at this trial or at Juan's trial that Juan Aranda could have fired the fatal shot. Everyone agreed he was carrying a sawed-off shotgun. That shotgun could not have fired the .38 slug that killed Officer Alvarez. So the suggestion in this court that perhaps there's prejudice arising from the possibility that Juan was really the shooter doesn't bear out on even the most basic review of the record. So when did the confession first come up at trial? I understand it wasn't mentioned in the principle, the initial closing argument either, until defense counsel mentioned it. Did it come up during the trial before? It had to have come up during some witnesses' testimony. Yes, Your Honor. The confession was admitted only in the state's rebuttal case after the defense called Juan Aranda to testify. And during his statement, he alluded to this by the police that he and the petitioner contend occurred at the jailhouse prior to their giving their statements. Okay. The confession was offered, it came in only in rebuttal, right? Correct. And then the prosecutor in closing argument said to the jury, you don't even need the confession in order to convict this defendant. Is that right? Correct, Your Honor. The prosecution didn't lean on this confession. And on my reading of the record, of course, I can't say what exactly was going on in the district attorney's mind, but my reading of the record is he brought it in only because it had become relevant and he didn't want there to be some doubt in the jury's mind as to what it said. So he brought it in rebuttal after he had had Juan Aranda on the stand. He then mentioned it during his rebuttal time in the closing argument. And as Judge Graves observed, told the jury, you don't need that. That told the jury that they could find. Your response to the argument, as I understood it, that somehow this gun just kind of made it to the hospital in some weird way that it wasn't there when they searched him at the place of the shooting and that the nurse saw a different gun. What's your response to that argument? Your Honor, the jury heard all of that testimony. The prosecution put on evidence that there were a number of inconsistencies in the nurse's notes from that night that undermined the weight to be given her testimony. And there's no dispute from Aranda, who also testified that his brother had used a pistol that night. So the jury reasonably found, based on the evidence, that the pistol that was found at the hospital was the same one that the defendant had been using. So there's no evidence that it was kind of stuck in his pocket? OK, because that I didn't understand as being an argument in the case until I No, I understood that there was problems with the nurse, but the argument Mr. Kearney made, I did not recall. No, there's nothing in the record to suggest that. It's certainly a suggestion that defense counsel at trial made to the jury. He questioned like, oh, it seems unlikely that the police officers on the scene didn't find this weapon. But again, the defendant was injured. He was transported on a stretcher lying on his stomach. But did they search the same place and not find it? Or were they just kind of getting it? They weren't searching it. The officers testified that they did a pretty perfunctory pat down and didn't search him thoroughly because he was injured and was being loaded into an ambulance. OK, so they didn't do a thorough search and not find it. And then they did a thorough hospital and did find it. OK, that's what I understand. Correct. That's right, Your Honor. So the petitioner's contention here is that the there are two crucial questions that he says the confession was key to supporting that the fatal shot was filed by Miranda and that Miranda shot first. As we've already discussed, the ballistics are entirely inconsistent with it having been shot by anyone else. The defense theory at trial was not that Juan fired the fatal bullet, as is argued in this court, but that he was tragically killed by friendly fire. But again, the ballistics foreclosed that, too, because the 38 lead bullet that killed Officer Alvarez could not have been fired by the nine millimeter semiautomatic that Officer Bieri used during the shooting. Again, as as to the theory that he shot first, that self-defense theory was submitted to the jury as part of its instructions and it was rejected. This confession that does recognize that in the statement, Arturo says that he shot at the officer as he was approaching him. But there's substantial other evidence to support that as well. This is, again, not a case where the only evidence to support a key fact or any fact at all relies on a confession given by the defendant. If there were any doubt as to the significance of this to the state's case, the prosecutor stated at ROA 5140, which was one of the pre-trial hearings, that even if the statement were suppressed on the defendant's motion, they would still proceed with the case. And then again, it's not mentioned in opening, it's not mentioned in the case in chief, and it comes in only on rebuttal after Wanda Randall takes the stand. I'd submit to your honors that on that record, there's no way for the petitioner to overcome Breck v. Abramson and show prejudice. So, you know, he did make that, I'm sorry, I did, I looked again, he did make kind of that argument, but it was in passing. I didn't understand that he was saying the gun wasn't there at the time. But I do now understand that it's on Blue Brief, page 29, but I didn't understand that that was what he was arguing till now he made that argument. Yes, I understand your response to it. Okay. Yes, yes. I think that's the suggestion that defense counsel made to the jury and that habeas counsel is now making. But again, all of these facts were before the jury and the jury. So that's not really appropriate for the federal court to suddenly decide for the first time. That's what I'm trying to understand. Absolutely, your honor. These are all part of the jury's verdict that's entitled to respect and federal habeas. With that, your honor, unless there are further questions, I would yield the remainder of my time. Okay, thank you very much. Unless, do my colleagues have a question? No. Okay, you can mute yourself and Mr. Carney, you're back and unmute. Maybe not. It's usually on the far left. Yes, I think it worked. There you go. Go ahead. All right. Thank you, your honor. Just to address a few points. We seem to be emphasizing in the context of what Mr. Aranda knew and understood when he was giving his confession, the focus on whether or not it was sufficient that he knew he was being charged with murder. And I would posit with the court that it's really more than that. It is the knowledge of the consequences of waiving his right in that confession. The right not to testify against himself, which is exactly what happened at trial. And this was not just an instance of the confession being mentioned at the rebuttal and in the closing argument. It was in the jury instructions delivered to the jury that they were invited to look at the confession, make a determination of voluntariness, and then decide whether or not they would accept the validity of the confession. But the instructions never instructed them to as well look at the issue of knowing an intelligent waiver. So I think it is a central factor in the trial. But what about the fact that the prosecution said, you know, we don't really need the confession. So, I mean, the fact that it was such a tail end thing kind of would make the jury think maybe the prosecution doesn't think this was a real confession. You know, why are we looking at it? Well, it was important enough to the prosecution that they got it into the jury instructions, inviting the jury to take a good look at it in deliberations. And the fact that the DA concluded an argument or spun an argument that you don't really need to worry about the confession because we have all this other evidence. Well, look at the other evidence. Ballistics was disputed. The circumstances of the shooting were disputed. There was no direct evidence. Nobody saw Arturo Aranda pick up the gun and fire the shot. His brother was sitting next to him in the car. It's not inconceivable that he could have reached over and grabbed the gun and did the shooting himself. And after all, he was convicted of intentionally killing that officer in a prior case. So, this is not conclusive testimony that the prosecution brought to bear. And the fact that he had to repeatedly, in rebuttal, and in requesting of the court that it be included in the instructions, and then in closing argument, left the jury with the message that, well, we've got him good to rights with other evidence, but oh, by the way, look at the confession. And as this court in past cases and the Supreme Court has said many times, that's the special impact of a confession. If there are any missing links in the prosecution's case, any failures, deficiencies in the case, it can be made up for because, wow, the defendant confessed, so clearly he must have done it. But doesn't it undercut your argument, the fact that the confession didn't come up on the government's principal case, but only came up later in rebuttal? Maybe there wouldn't have been a jury instruction discussing whether the confession was a valid one or not. It wasn't even an instruction that, in other words, it was an instruction that invited scrutiny of the confession, but there would not have been an instruction at all, but for the confession coming up as part of the defendant's case. Why should we not view it that way? Well, but to what impact and what purpose is there a difference with respect to the impact of the confession, however it arose at trial? If the impact is that the jury is looking at it from strictly the point of view of, was it a voluntarily rendered confession? Oh, well, it was. We believe that evidence, therefore we accept the validity of the confession. When the case law at the time was clear that that's not enough. We had to as well assess, adjudicate the knowing and intelligent requirement, and that was not done here. So however it arose in rebuttal, closing, even in the defendant's case, it was brought up. It was before the jury. The jury needed proper counseling in terms of how to deal with it, and it certainly didn't receive it in that instruction. So I think the prejudice is pretty clear. And in terms of prejudice, although I believe the record shows actual prejudice, and the case law shows that the special circumstances of a confession give it almost prejudice in and of itself, Breck does not say in our view that actual prejudice is a requirement. You know, Breck standard did not shift the burden of proof that the state has to prove to justify its indictment and prove the harmlessness of any error committed in the confession. I mean, it was the state's burden in prosecuting its state, its case, in bringing forth that confession to prove the validity, to show the validity of that confession. It had that burden. And the harmlessness of the issue of whether or not a deficient confession or some omission that took place in the rendering of the confession was harmless or not, that's the state's burden to show in the context of assessing the admissibility of that confession. Okay. I didn't want to interrupt you, but your time has expired. So unless my colleagues have any more questions, I think I've asked enough. Do my colleagues have any questions? Okay. We want to thank you for your CJA service, and we want to thank both sides for your arguments and the case is now under submission and we are now adjourned. We'll let you all depart.